**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | | |
|---|---|---|
| CHAR-BROIL, LLC, | ) | |
|     a Georgia corporation | ) | |
| | ) | Civil Action No. _____ |
|     Plaintiff, | ) | |
| | ) | |
| | ) | JURY DEMAND |
| v. | ) | |
| | ) | |
| A&J MANUFACTURING, LLC, | ) | |
|     a Georgia corporation, and | ) | |
| | ) | |
| A&J MANUFACTURING, INC., | ) | |
|     a Florida corporation, | ) | |
| | ) | |
|     Defendants. | ) | |

**COMPLAINT**

PLAINTIFF CHAR-BROIL, LLC, by and through its attorneys, and for its

Complaint against Defendants A&J MANUFACTURING, LLC and A&J

MANUFACTURING, INC., states and alleges as follows:

**NATURE OF SUIT**

In this action, Plaintiff seeks a declaration of non-infringement, invalidity,

and unenforceability with respect to Defendants' patents on a so-called dual mode

cooker, and damages and an injunction to prohibit Defendants from continued false

advertising and unfair competition.

Plaintiff Char-Broil, LLC ("Char-Broil"), a wholly owned subsidiary of W.C. Bradley Co. ("WCB"), is a leading company engaged in the business of designing, manufacturing, promoting and selling barbecue grills and smokers. Since 1948, Char-Broil has sold Char-Broil® branded grills in the United States, Canada, Australia and throughout Latin America.  In addition to the Char-Broil® brand, the company manufactures and sells a portfolio of other outdoor cooking brands, including Oklahoma Joe's® smoker grills.

In 2006 or earlier, Defendants misappropriated certain of Plaintiff's trade dress related to what are known as offset smokers.  Litigation ensued, and the matter was settled with Defendants taking a license from WCB to its smoker trade dress.  Defendants later filed two design patent applications with the U.S. Patent and Trademark Office ("PTO") directed to designs Defendants now contend include the licensed trade dress.  Defendants failed to advise the Examiner at the United States Patent and Trademark Office (the "Examiner") of their own sale of the subject grills for years prior to the priority date of the applications and other material prior art, such as the licensed trade dress.  Defendants now have falsely accused certain of Char-Broil's products of infringing the improperly obtained design patents and have made other unwarranted claims of infringement against Char-Broil products.  Defendants have compounded the situation by directing false and misleading communications to Plaintiff's current and prospective customers.

Char-Broil seeks a declaration that its barbecue grills and smokers do not infringe Defendants' patents and furthermore, that Defendants' patents are invalid and unenforceable.   Plaintiff also seeks damages and an injunction to prohibit Defendants from confusing and misleading the market, both retailers and consumers, through their false advertising campaign.

## PARTIES

1.      Char-Broil is a corporation organized and existing under the laws of the state of Georgia, having its principal place of business at 1017 Front Avenue, Columbus, Georgia.

2.      On information and belief, Defendant A&J Manufacturing, LLC is a limited liability company organized and existing under the laws of the state of Georgia, having a place of business at 2465 Demere Road, St. Simons Island, Glynn County, Georgia 31522.

3.      On information and belief, Defendant A&J Manufacturing, Inc. is a corporation organized and existing under the laws of the state of Florida, having a place of business at 903 Lake Asbury Drive, Green Cove Springs, Florida 32043.

## JURISDICTION, VENUE AND JOINDER

4.      This action arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.; the Lanham Act, 15 U.S.C. § 1051 *et seq*.; and the statutory and common

laws of the State of Georgia. An actual, substantial, and continuing justiciable controversy exists between Plaintiff and Defendants that requires a declaration of rights by this Court.

5. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 2201 and 2202.

6. The Court has supplemental jurisdiction over all remaining claims pursuant to 28 U.S.C. § 1367(a).

7. This Court has personal jurisdiction over Defendants by virtue of Defendants' purposeful contact with this district, including, on information and belief, Defendants' operation of a business and substantial business with customers residing in this district; and Defendants' attempt to enforce patents purportedly assigned to them against Plaintiff in the United States District Court for the Southern District of Georgia.

8. The acts alleged herein against both Defendants arise out of the same transaction, occurrence or series of transactions or occurrences. Further, questions of fact common to both Defendants will arise in this action. Therefore, joinder of both Defendants in this action is authorized by 35 U.S.C. § 299(a).

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

10.     Plaintiff and Defendants are manufacturers of barbecue grills and smokers and sell several grill and smoker models that directly compete with one another.

11.     Defendants purport to be the owner of U.S. Design Patent Nos. D660,646 ("the '646 Patent," copy attached hereto as Exhibit A) and D662,773 ("the '773 Patent," copy attached hereto as Exhibit B), and U.S. Utility Patent No. 8,381,712 ("the '712 Patent," copy attached hereto as Exhibit C) (collectively, the "Patents-in-Suit").

12.     The Patents-in-Suit are related to one another in that the '712 Patent claims priority to U.S. Provisional Patent Application 60/592,428 ("the '428 provisional application") and U.S. Provisional Patent Application 60/592,429 ("the '429 provisional application"), both filed on July 31, 2004, and the '646 and '773 Patents claim priority as continuations-in-part to the '712 Patent.

13.     Each of the Patents-in-Suit identifies John Lee Simms, II ("Simms") as the sole inventor.  On information and belief, Simms is the principal of both Defendants.

## PROSECUTION OF THE '019 AND '027 APPLICATIONS ('646 AND '773 DESIGN PATENTS)

14.     The '428 provisional application and the '429 provisional application both include a front-perspective rendering of a barbecue grill. The front-perspective view of the barbecue grill is the only view disclosed in each application.

15.     Patent Application No. 11/193,320 ("the '320 application"), which issued as the '712 Patent, was filed on July 30, 2005. It also includes a front-perspective diagram of a barbecue grill. The front-perspective view of the barbecue grill is the only view disclosed in the '320 application.

16.     Sometime before early 2007, Defendants began offering their Duo 5050 grill for sale in the United States. The Duo 5050 grill embodies the claimed subject matter of the '712 Patent and also embodies the allegedly ornamental designs disclosed in the '646 Patent and the '773 Patent.

17.     Applicant failed to disclose to the Examiner the Duo 5050 grill and other prior art material to the patentability of the '646 and '773 design patents.

18.     Patent Application No. 29/392,019 ("the '019 application"), which issued as the '646 Patent, was filed on May 16, 2011. The application discloses an allegedly ornamental design for a pair of lids for a dual grill. The application includes seven figures, depicting a front-perspective view, a front view, a rear

view, a left side view, a right side view, and top view, and a bottom view of a grill all depicted in phantom with the exception of the claimed pair of semi-cylindrical lids.

19.     Patent Application No. 29/392,027 ("the '027 application"), which issued as the '773 Patent, was filed on May 16, 2011.  The application discloses an allegedly ornamental design of a set of smoke stacks for a dual grill.   The application includes seven figures, depicting a front-perspective view, a front view, a rear view, a left side view, a right side view, and top view, and a bottom view of a grill, all depicted in phantom with the exception of the claimed set of smoke stacks.

20.     During prosecution of the '646 and the '773 design patents, the Examiner rejected the applicant's claim that the applications are entitled to claim priority to the '320 application.  By statute and rule, design patents cannot claim priority to provisional patent applications, but the Examiner also reasoned that the earlier filings, specifically the '320 application, only disclosed the front-perspective view of the claimed design and therefore did not satisfy the written description requirement of 35 U.S.C. § 112.

21.     Six of the seven figures in each of the '646 and '773 design patent applications were found by the Examiner to be new matter not disclosed/contained in the '320 application from which the applicant attempted to claim priority.   As a

result, the Examiner required the applicant to remove the claim to priority in each of the '646 and '773 design patent applications to the '320 application.   In response, the applicant separately amended each of the '646 and '773 design patent applications to be continuations-in-part of the '320 application.

22.   The  Examiner accepted the amendment maintaining that the '646 and '773 design applications could not claim priority to the '320 application.

23.   Pursuant to patent examination practice, citing *In re Corba*, 212 USPQ 825 (Comm'r Pat. 1981), the Examiner stated that the entitlement to priority would not be considered in either application unless the earlier priority date was needed to avoid intervening prior art.   The applicant's own Duo 5050 Grill constituted intervening prior art  to the '646 Patent and the '773 Patent because it was on sale well before May 2010, more than a year before the filing of the application.   As a result, the '646 and '773 design patents are invalid under at least 35 U.S.C. 102(b).

24.   The applicant filed a supplemental Information Disclosure Statement with only a short third party promotional reference about the Duo.  Defendants did not inform the PTO that the Duo grill was on sale as early as 2007.

25.   This omission by the Defendant was material to the patentability of the '646 Patent because the Duo grill anticipated the claim of the '019 application.

Applicant's failure to disclose the facts about its Duo grill constitutes inequitable conduct.

26.     At about the same time Defendants were coming out with the Duo grill, Defendants were sued for infringement of WCB's trade dress rights related to grills and smokers with substantially horizontal cylindrical chambers.   This included a double door smoker, barbeque and grill.   The litigation resulted in Defendants entering into licenses for WCB's trade dress.   Design patent protection was nevertheless sought by Defendants for features included in the trade dress.

### PROSECUTION OF THE '320 APPLICATION ('712 UTILITY PATENT)

27.     During the prosecution of the '320 application, the applicant made statements to the PTO Examiner to distinguish prior art that anticipated or rendered obvious the invention described in the application.

28.     Specifically, the applicant stated in its July 30, 2005, Response and Amendment that the prior art reference U.S. Patent No. 6,189,528 ("the '528 Patent") did not anticipate the '320 application because it nowhere disclosed "that a cooking apparatus could include a charcoal cook unit and a gas cook unit."

29.     Contrary to this representation, the '528 Patent's specification and diagrams clearly disclose a barbecue grill comprised of one cooking unit that could use gas, and another that could use charcoal simultaneously. *See, e.g.,* '528 Patent at 2:51-55 ("FIG. 20 is a perspective view of the cooking system of FIG. 19

wherein top reflectors are open and a container of fuel is positioned along one end thereof for cooking on a griddle on one side of the cooking system, and a charcoal grill is used on the other side."); *see also id*. at 6:23-26 ("Brackets 76 are used to support a propane burner 94 and propane tank. In this embodiment, one can griddle and grill simultaneously.").

30.     In the February 6, 2013, Notice of Allowance of the '320 application, the Examiner accepted the applicant's false distinction, stated that "Oliver fails to disclose or make obvious multiple distinct fuels at one time among other limitations required by the claims." *Id*. at 2.

31.     Moreover, Defendants originally provided no disclosure of the term "exhaust" or "exhaust means."  This terminology was added after the filing date of the '320 Application and was identified by the applicant as being a "smoke stack."

## DEFENDANTS' LAWSUITS

32.     On August 21, 2013, Defendants filed suit against WCB in the Southern District of Georgia alleging infringement of the Patents-in-Suit.  This case is captioned *A&J Manufacturing, LLC et al v. W.C. Bradley Co. et al*, 2:13-cv-00115-LGW-JEG (S.D. Ga.).   WCB has not yet been served in this case. Defendants also filed separate lawsuits against several other barbecue grill manufacturers and retailers.

33.     On August 21, 2013, Defendants brought an action for patent infringement in the United States International Trade Commission (ITC) against WCB and several other barbecue grill manufacturers and retailers, alleging infringement of the Patents-in-Suit and seeking to ban importation into the U.S. of the allegedly infringing grills.

34.     Defendants' own characterization of the claims of the '712 Patent as argued to the Examiner mandates that the '712 Patent cannot be read so as to cover Plaintiff's accused products.   Among other things, Defendants distinguished the alleged invention's feature of having exhausts in the covers from prior art references having exhausts in the fixed portion of the grill.

35.     Defendants now falsely assert in the lawsuit and ITC proceeding that the '712 covers devices in which the only smoke stacks or chimneys are attached to a fixed portion, namely, the Oklahoma Joe's grill.

36.     Also, Defendants now falsely assert in the lawsuit and ITC proceeding that the '712 patent should be read to cover devices with no smoke stacks or chimneys at all, namely, the Char-Broil grill.

**DEFENDANTS' COMMUNICATIONS WITH PLAINTIFF'S CUSTOMERS**

37.     On August 21, 2013, on information and belief, Defendants sent letters to numerous retailers of barbecue grills around the country informing the retailers that Defendants had filed the aforementioned actions in district court and

the ITC against "infringers of A&J's patents."  (A copy of one of the letters is attached hereto as Exhibit D).  The letters threatens that "an exclusion order could adversely affect" the retailers.  Defendants admit in the letters that Defendants' Duo grill embodies the claimed subject matter of the Patents-in-Suit.

38.     When Defendants sent the August 21, 2013 letters, they knew that the '646 Patent and the '773 Patent were invalid because, among other things, they were anticipated by Defendants' own Duo grill.

39.     When Defendants sent the August 21, 2013 letters, they knew that the '712 Patent was invalid and/or unenforceable because of the applicant's mischaracterization of prior art and because it was otherwise anticipated or rendered obvious by other prior art.

40.     When Defendants sent the August 21, 2013 letters, they knew that Plaintiff's products did not infringe the Patents-In-Suit because, among other things, Char-Broil's products clearly do not have openable covers including exhausts.

## DEFENDANTS' OTHER FALSE ADVERTISING

41.     Defendants' website includes a page entitled "BBQ Grill Comparison."  In the guise of this comparison, Defendants make false and misleading statements about Char-Broil's products, all of which are in interstate commerce.

42.     The BBQ Grill Comparison webpage purports to compare the features of Defendants' Char-Griller Smokin' Pro barbecue grill and Char-Broil's Silver Smoker barbecue grill.   The Universal Resource Locator for Defendants' BBQ Grill Comparison webpage is: http://www.chargriller.com/index.php?option=com_content&view=article&id=9&Itemid=9.

43.     Plaintiff released the original version of the Char-Broil Silver Smoker barbecue grill in 2003, and introduced a subsequent model in 2007 with various changes.   Plaintiff made further changes to the Char-Broil Silver Smoker in 2012. However, Defendants' BBQ Grill Comparison webpage lists the features of the 2003 model of the Silver Smoker, which compares less favorably than the 2007 and later models to Defendants' products.   Several of the points of comparison on the BBQ Grill Comparison webpage are false because they refer to features of the 2003 model of the Silver Smoker rather than the later models that have been offered for sale since then.

## FIRST CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT)

44.     Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 36 above.

45.     An actual controversy has arisen and now exists between the parties with respect to the alleged infringement of the Patents-in-Suit.   Plaintiff contends

that Plaintiff's products, including Char-Broil Model No. 463724512 barbecue grill and the Oklahoma Joe Combination Charcoal/Gas Longhorn barbecue grill have not infringed and do not infringe any valid claim of the Patents-in-Suit. Defendants dispute these contentions.

46.     Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to the alleged infringement of the Patents-in-Suit is necessary and appropriate under the circumstances.

### SECOND CLAIM FOR RELIEF
**(DECLARATORY JUDGMENT OF INVALIDITY AND/OR UNENFORCEABILITY)**

47.     Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 36 above.

48.     The '646 Patent, the '773 Patent, and the '712 Patent are invalid for failure to meet one or more of the requirements of patentability under 35 U.S.C. § 101, et seq., including but not limited to 35 U.S.C. §§ 102, 103 and 112.

49.     The claims of the '646 Patent, the '773 Patent, and the '712 Patent are invalid because the alleged inventions and designs claimed therein are anticipated by the prior art and thus fail to satisfy the conditions for patentability set forth in 35 U.S.C. § 102.

50.     The claims of the '646 Patent, the '773 Patent, and the '712 Patent are invalid because, in view of the prior art, the alleged inventions and designs claimed

therein are obvious to one having ordinary skill in the art, and thus fail to satisfy the conditions for patentability set forth in 35 U.S.C. § 103.

51.     Upon information and belief, the '646 Patent and the '773 Patent are unenforceable as a result of Defendants' inequitable conduct.

52.     Plaintiff is entitled to a declaratory judgment that the claims of the Patents-in-Suit are invalid and/or unenforceable.

### THIRD CLAIM FOR RELIEF
**(FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT)**

53.     Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 43 above.

54.     Defendants' false and materially misleading descriptions of fact and false claims of product inferiority violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

55.     Defendants' webpage entitled "BBQ Grill Comparison," online at http://www.chargriller.com/index.php?option=com_content&view=article&id=9&Itemid=9 is false, deceptive, and misleading.

56.     Defendants' false, deceptive, and misleading advertising has the capacity to deceive consumers and is likely to influence consumers' purchasing decisions.   Upon information and belief, Defendants' false, deceptive, and misleading advertising has deceived consumers.

57.     Defendants' false, deceptive, and misleading advertising has a material effect on purchasing decisions.

58.     Plaintiff has been injured as a result of Defendants' wrongful conduct.

59.     Plaintiff will continue to be irreparably injured unless and until Defendants' conduct is preliminarily, and thereafter permanently, enjoined by this Court, and Plaintiff has no adequate remedy at law.

60.     As a direct and proximate result of Defendants' false, deceptive, and misleading advertising, Plaintiff has suffered damages in an amount to be determined by the trier of fact.

61.     Defendants have engaged in intentional and willful violation of the Lanham Act, thus entitling Plaintiff to enhanced damages and attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF
### (UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT)

62.     Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 43 above.

63.     Defendants' communications to Plaintiff's actual and potential customers of purported infringement of invalid patents are false, deceptive, and misleading, and have been made in bad faith.

64.     Defendants' false representations to Plaintiff's existing and potential customers about Plaintiff's purportedly infringing conduct violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

65.     Defendants' false, deceptive, and misleading communications have the capacity to deceive consumers and are likely to influence consumers' purchasing decisions. Upon information and belief, Defendants' false, deceptive, and misleading communications have deceived consumers.

66.     Defendants' false, deceptive, and misleading communications have a material effect on purchasing decisions.

67.     Plaintiff has been injured as a result of Defendants' wrongful conduct.

68.     Plaintiff will continue to be irreparably injured unless and until Defendants' conduct is preliminarily, and thereafter, permanently enjoined by this Court, and Plaintiff has no adequate remedy at law.

69.     As a direct and proximate result of Defendants' false, deceptive, and misleading communications, Plaintiff has suffered damages in an amount to be determined by the trier of fact.

70.     Defendants have engaged in intentional and willful violation of the Lanham Act, thus entitling Plaintiff to enhanced damages and attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
### (TORTIOUS INTERFERENCE WITH CONTRACTS AND BUSINESS RELATIONSHIPS)

71.    Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 43.

72.    Plaintiff maintains contracts and advantageous business relations with retailers that sell Plaintiff's grills to end users.

73.    Defendants have tortiously interfered with those contracts and/or business relationships by disseminating false or misleading statements, including claims that Plaintiff's products infringe Defendants' invalid patents.

74.    Defendants' dissemination of false and misleading statements about Plaintiff's products was improper, without privilege, and purposeful.

75.    Defendants' dissemination of false and misleading statements about Plaintiff's products was done with malice and with the intent to injure Plaintiff.

76.    Through their wrongful acts of interference, Defendants have proximately caused substantial injury and financial harm to Plaintiff.

77.    Defendants are not entitled to any revenues that they have realized from customers coming from the unlawful interference that Defendants have committed, and Defendants should be required to account for, disgorge and return to Plaintiff all such payments.

78.     Plaintiff is likewise entitled to all other damages available by law as well as to all equitable relief including injunctive relief.

79.     Each Defendant's interference with Plaintiff's contracts and business relationships was willful, wanton, malicious and in reckless disregard of Plaintiff's rights, as well as in disregard of the harm that each Defendant was causing and was foreseeably likely and intended to cause Plaintiff, so that punitive damages should be imposed on Defendants.

## SIXTH CLAIM FOR RELIEF
### (VIOLATION OF THE GEORGIA DECEPTIVE TRADE PRACTICES ACT, O.C.G.A. § 10-1-370 ET SEQ.)

80.     Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 43.

81.     Defendants have engaged in deceptive trade practices in violation of O.C.G.A. § 10-1-370 et. seq., by falsely disparaging the goods, services, and business of Plaintiff. Defendants' false and misleading statements have been made in bad faith.

82.     Plaintiff has sustained and will sustain damages including irreparable harm to its reputation and goodwill, as a result of Defendants' unlawful conduct.

83.     As a result of Defendants' ongoing deceptive trade practices, Plaintiff is entitled to temporary, interlocutory, and permanent injunctive relief to remedy those violations.

84.    Plaintiff is also entitled to recover its attorneys' fees and costs incurred in connection with this action.

## SEVENTH CLAIM FOR RELIEF
### (ATTORNEY'S FEES AND EXPENSES OF LITIGATION UNDER O.C.G.A. § 13-6-11)

85.    Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 88.

86.    Defendants have acted in bad faith, and have caused Plaintiff unnecessary trouble and expense.

87.    Plaintiff is entitled to an award of attorney's fees and costs incurred in prosecuting this action pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.    For a judicial declaration that Plaintiff does not infringe any valid claim of U.S. Design Patent Nos. D660,646 and D662,773, and U.S. Utility Patent No. 8,381,712.

B.    For a judicial declaration that the claims of U.S. Design Patent Nos. D660,646 and D662,773, and U.S. Utility Patent No. 8,381,712 are invalid and/or unenforceable.

C.     For a determination that this is an exceptional case pursuant to 35 U.S.C. § 285 and an order granting Plaintiff its reasonable attorney fees and costs.

D.     For an order granting Plaintiff a Temporary Restraining Order, Interlocutory and Permanent Injunction enjoining Defendants from making any false, misleading or disparaging representations about Plaintiff's products.

E.     For an order awarding the amount of actual, consequential and/or compensatory damages proved by Plaintiff, including treble damages under 15 U.S.C. § 1117(a).

F.     For an order requiring an accounting from Defendants of all revenues received from operation of their business and disgorgement of all profits from their wrongful activity;

G.     For an order awarding Plaintiff punitive damages against each Defendant for their intentional acts described herein to the full extent allowed by law.

H.     For an order awarding Plaintiff its costs, expenses, and reasonable attorneys' fees as provided by law; and

I.     For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues presented in this Complaint.

Respectfully submitted, this __23rd__ day of September, 2013.

 /s/  James B. Durham, Esq. 
JAMES B. DURHAM
Georgia State Bar No. 235526
Attorney for Plaintiff
DURHAM & RIZZI, P.C.
Post Office Box 2177
Brunswick, Georgia  31521-2177
Telephone: (912)264-1800
Email: jdurham@durhamfirm.com

JOHN W. HARBIN
Georgia State Bar No. 324130
Attorney for Plaintiff
*(pro hac vice admission being applied for)*
KING & SPALDING
1180 Peachtree Street
Atlanta, Georgia  30309
Telephone: (404) 572-4600
Email: jharbin@kslaw.com

# EXHIBIT A



US00D660646S

(12) **United States Design Patent**    (10) Patent No.:     **US D660,646 S**

Simms, II    (45) Date of Patent:    ** **May 29, 2012**

(54) **PAIR OF LIDS FOR A DUAL GRILL**

(75) Inventor:    **John Lee Simms, II**, Atlanta, GA (US)

(73) Assignee:    **A&J Manufacturing, LLC**, Sea Island, GA (US)

(**) Term:    **14 Years**

(21) Appl. No.:    **29/392,019**

(22) Filed:    **May 16, 2011**

**Related U.S. Application Data**

(63) Continuation of application No. 11/193,320, filed on Jul. 30, 2005.

(51) **LOC (9) Cl.** ................................................ **07-02**
(52) **U.S. Cl.** ........................................................ **D7/402**
(58) Field of Classification Search ................. D7/332, D7/334 337, 402–405, 338, 417; 125/25 R, 125/25 A, 25 AA, 25 B, 273 R, 9 R, 38, 40, 125/50, 9 B, 48, 29–30, 43–44, 26, 372, 314, 125/307 R, 312, 292; 99/339, 448, 449, 99/481–482, 516, 340–341; 431/331
See application file for complete search history.

(56)    **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D165,998 S | * | 2/1952 | Pollard ........................ D7/334 |
| 2,666,426 A | * | 1/1954 | Pollard .................. 126/25 R |
| 2,687,716 A | * | 8/1954 | Wong ......................... 126/345 |
| 2,817,331 A | | 1/1957 | Kaplan et al. |
| 2,902,026 A | * | 9/1959 | Hathorn, Jr. .......... 126/25 R |
| 2,903,549 A | | 9/1959 | Joseph |
| D196,553 S | * | 10/1963 | Mayer ........................ D7/334 |
| 3,477,580 A | * | 11/1969 | Willinger .............. 210/167.23 |
| 3,541,947 A | | 11/1970 | Anderson |
| D229,660 S | * | 12/1973 | Gammon ................... D7/332 |
| 3,802,413 A | | 4/1974 | Pepin |
| 3,868,942 A | * | 3/1975 | Lewis .................. 126/25 R |
| D235,088 S | * | 5/1975 | Erikson ..................... D7/332 |
| 4,090,490 A | * | 5/1978 | Riley et al. ............ 126/25 R |

| | | | |
|---|---|---|---|
| 4,170,173 A | * | 10/1979 | Bradford ..................... 99/341 |
| D255,863 S | * | 7/1980 | Futch ........................... D7/334 |
| 4,392,419 A | | 7/1983 | Bonny |
| 4,665,891 A | * | 5/1987 | Nemec et al. ......... 126/25 R |
| 4,677,964 A | | 7/1987 | Lohmeyer et al. |
| 4,700,618 A | | 10/1987 | Cox, Jr. |
| 4,773,319 A | | 9/1988 | Holland |
| 4,809,671 A | | 3/1989 | Vallejo, Jr. |
| 4,878,477 A | | 11/1989 | McLane |
| 4,886,045 A | | 12/1989 | Ducate et al. |
| 4,934,333 A | | 6/1990 | Ducate et al. |
| 5,070,857 A | * | 12/1991 | Sarten .................. 126/25 R |
| 5,076,252 A | | 12/1991 | Schlosser et al. |
| 5,195,423 A | | 3/1993 | Beller |
| 5,213,027 A | | 5/1993 | Tsotsos et al. |
| 5,460,159 A | | 10/1995 | Bussey |
| 5,481,964 A | | 1/1996 | Kitten |
| 5,528,984 A | | 6/1996 | Saurwein |
| 5,566,606 A | | 10/1996 | Johnston |

(Continued)

OTHER PUBLICATIONS

U.S. Appl. No. 60/952,428, filed Jul. 31, 2004, Simms, II.

(Continued)

*Primary Examiner* — Ruth McInroy
(74) *Attorney, Agent, or Firm* — Lee & Hayes, PLLC

(57)    **CLAIM**

The ornamental design for a pair of lids for a dual grill, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective view of a pair of lids for a dual grill showing my new design;
FIG. 2 is a front view thereof.
FIG. 3 is a rear view thereof.
FIG. 4 is a left side view thereof.
FIG. 5 is a right side view thereof.
FIG. 6 is a top view thereof; and,
FIG. 7 is a bottom view thereof.

**1 Claim, 3 Drawing Sheets**





## US D660,646 S
Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,706,797 | A | 1/1998 | Moore, Jr. et al. |
| 5,752,497 | A * | 5/1998 | Combs et al. .............. 126/25 R |
| 5,768,977 | A | 6/1998 | Parris et al. |
| 5,893,357 | A | 4/1999 | Royer et al. |
| 6,039,039 | A | 3/2000 | Pina, Jr. |
| 6,103,289 | A | 8/2000 | Tippmann et al. |
| 6,145,431 | A | 11/2000 | Tippmann et al. |
| 6,189,538 | B1 * | 2/2001 | Oliver ......................... 126/25 R |
| 6,209,533 | B1 | 4/2001 | Ganard |
| 6,257,130 | B1 | 7/2001 | Schlosser |
| D447,913 | S * | 9/2001 | Cragg ........................ D7/402 |
| 6,439,221 | B1 | 8/2002 | Ward et al. |
| 6,508,165 | B2 | 1/2003 | Johnson |
| 6,523,461 | B1 | 2/2003 | Johnston et al. |
| 6,557,545 | B2 | 5/2003 | Williams |
| 6,564,793 | B2 | 5/2003 | DeClue |
| 6,606,986 | B2 * | 8/2003 | Holland et al. .............. 126/25 R |
| 6,626,089 | B1 | 9/2003 | Hubert |

| | | | |
|---|---|---|---|
| D483,602 | S * | 12/2003 | Murray ......................... D7/334 |
| 6,681,759 | B2 * | 1/2004 | Bentulan .................. 126/25 R |
| D491,410 | S * | 6/2004 | Saunders ....................... D7/334 |
| 6,820,538 | B2 | 11/2004 | Roescher |
| 7,159,509 | B2 | 1/2007 | Starkey |
| D607,263 | S * | 1/2010 | Antwine ..................... D7/334 |
| D636,217 | S * | 4/2011 | Slater et al. .................. D7/334 |
| 2002/0106428 | A1 | 8/2002 | Szyjkowski |
| 2003/0019492 | A1 * | 1/2003 | Williams .................. 126/41 R |
| 2010/0083947 | A1 * | 4/2010 | Guillory et al. .......... 126/25 R |
| 2010/0258106 | A1 * | 10/2010 | Simms, II .................. 126/25 R |

### OTHER PUBLICATIONS

U.S. Appl. No. 60/592,429, filed Jul. 31, 2004, Simms, II.
U.S. Appl. No. 11/193,320, filed Jul. 30, 2005, Simms, II.
U.S. Appl. No. 29/392,027, filed May 16, 2011, Simms, II.
Hughes, R., "Be A Grill Master," *Vertical*, Jul./Aug., 2010, 2 pages.

* cited by examiner



*FIG. 1*

*FIG. 2*



*FIG. 3*



*FIG. 4*



*FIG. 5*



*FIG. 6*



*FIG. 7*

# EXHIBIT B



US00D662773S

(12) **United States Design Patent**
Simms, II

(10) Patent No.: **US D662,773 S**
(45) Date of Patent: **** **Jul. 3, 2012**

(54) **SET OF SMOKE STACKS FOR A DUAL GRILL**

(76) Inventor: **John Lee Simms, II**, Atlanta, GA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/392,027**

(22) Filed: **May 16, 2011**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 11/193,320, filed on Jul. 30, 2005.

(51) LOC (9) Cl. ................................................. 07-02
(52) U.S. Cl. ............................................... D7/402
(58) Field of Classification Search .................. D7/332, D7/334–337, 402–405, 338, 417; 126/25 R, 126/25 A, 25 AA, 25 B, 273 R, 9 R, 38, 40, 126/50, 9 B, 48, 29–30, 43–44, 26, 372, 314, 126/307 R, 312, 292; 99/339, 448, 449, 99/481–482, 516, 340–341; 431/331
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D165,998 | S | * | 2/1952 | Pollard ............................ D7/334 |
| 2,666,426 | A | * | 1/1954 | Pollard ...................... 126/25 R |
| 2,687,716 | A | * | 8/1954 | Wong ............................ 126/345 |
| 2,817,331 | A | | 12/1957 | Kaplan et al. |
| 2,902,026 | A | * | 9/1959 | Hathorn, Jr. ............ 126/25 R |
| 2,903,549 | A | | 9/1959 | Joseph |
| D196,553 | S | * | 10/1963 | Mayer ............................ D7/334 |
| 3,477,580 | A | * | 11/1969 | Willinger ................ 210/167.23 |
| 3,541,947 | A | | 11/1970 | Anderson |
| D229,660 | S | * | 12/1973 | Gammon ...................... D7/332 |
| 3,802,413 | A | | 4/1974 | Pepin |
| 3,868,942 | A | * | 3/1975 | Lewis ...................... 126/25 R |
| D235,088 | S | * | 5/1975 | Erickson ...................... D7/332 |
| 4,090,490 | A | * | 5/1978 | Riley et al. .............. 126/25 R |
| 4,170,173 | A | * | 10/1979 | Bradford ...................... 99/341 |
| D255,863 | S | * | 7/1980 | Futch ............................ D7/334 |
| 4,392,419 | A | | 7/1983 | Bonny |

| | | | | |
|---|---|---|---|---|
| 4,665,891 | A | * | 5/1987 | Nemec et al. ................ 126/25 R |
| 4,677,964 | A | | 7/1987 | Lohmeyer et al. |
| 4,700,618 | A | | 10/1987 | Cox, Jr. |
| 4,773,319 | A | | 9/1988 | Holland |
| 4,809,671 | A | | 3/1989 | Vallejo, Jr. |
| 4,878,477 | A | | 11/1989 | McLane |
| 4,886,045 | A | | 12/1989 | Ducate et al. |
| 4,934,333 | A | | 6/1990 | Ducate et al. |
| 5,070,857 | A | * | 12/1991 | Sarten ...................... 126/25 R |
| 5,076,252 | A | | 12/1991 | Schlosser et al. |
| 5,195,423 | A | | 3/1993 | Beller |
| 5,213,027 | A | | 5/1993 | Tsotsos et al. |
| 5,460,159 | A | | 10/1995 | Bussey |
| 5,481,964 | A | | 1/1996 | Kitten |
| 5,528,984 | A | | 6/1996 | Saurwein |
| 5,566,606 | A | | 10/1996 | Johnston |
| 5,706,797 | A | | 1/1998 | Moore, Jr. et al. |
| 5,752,497 | A | * | 5/1998 | Combs et al. ................ 126/25 R |
| 5,768,977 | A | | 6/1998 | Parris et al. |

(Continued)

OTHER PUBLICATIONS

U.S. Appl. No. 60/592,428, filed Jul. 31, 2004, Simms, II.

(Continued)

*Primary Examiner* — Ruth McInroy
(74) *Attorney, Agent, or Firm* — Lee & Hayes, PLLC

(57) **CLAIM**

The ornamental design set of smoke stacks for a dual grill, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective view set of smoke stacks for a dual grill.
FIG. 2 is a front view thereof.
FIG. 3 is a rear view thereof.
FIG. 4 is a left side view thereof.
FIG. 5 is a right side view thereof.
FIG. 6 is a top view thereof; and,
FIG. 7 is a bottom view thereof.

**1 Claim, 3 Drawing Sheets**





## US D662,773 S
Page 2

### U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,893,357 | A | | 4/1999 | Royer et al. |
| 6,039,039 | A | | 3/2000 | Pina, Jr. |
| 6,103,289 | A | | 8/2000 | Tippmann et al. |
| 6,145,431 | A | | 11/2000 | Tippmann et al. |
| 6,189,528 | B1 | * | 2/2001 | Oliver ..................... 126/25 R |
| 6,209,533 | B1 | | 4/2001 | Ganard |
| 6,257,130 | B1 | | 7/2001 | Schlosser |
| D447,913 | S | * | 9/2001 | Cragg ........................ D7/402 |
| 6,439,221 | B1 | | 8/2002 | Ward et al. |
| 6,508,165 | B2 | | 1/2003 | Johnson |
| 6,523,461 | B1 | | 2/2003 | Johnston et al. |
| 6,557,545 | B2 | | 5/2003 | Williams |
| 6,564,793 | B2 | | 5/2003 | DeClue |
| 6,606,986 | B2 | * | 8/2003 | Holland et al. ............ 126/25 R |
| 6,626,089 | B1 | | 9/2003 | Hubert |
| D483,602 | S | * | 12/2003 | Murray ........................ D7/334 |
| 6,681,759 | B2 | * | 1/2004 | Bentulan .................... 126/25 R |
| D491,410 | S | * | 6/2004 | Saunders ...................... D7/334 |
| 6,820,538 | B2 | | 11/2004 | Roescher |
| 7,159,509 | B2 | | 1/2007 | Starkey |
| D607,263 | S | * | 1/2010 | Antwine ...................... D7/334 |
| D636,217 | S | * | 4/2011 | Slater et al. ................. D7/334 |
| 2002/0106428 | A1 | | 8/2002 | Szyjkowski |
| 2003/0019492 | A1 | * | 1/2003 | Williams ................. 126/41 R |
| 2010/0083947 | A1 | * | 4/2010 | Guillory et al. ............ 126/25 R |
| 2010/0258106 | A1 | * | 10/2010 | Simms, II ................. 126/25 R |

### OTHER PUBLICATIONS

U.S. Appl. No. 60/592,429, filed Jul. 31, 2004, Simms, II.
U.S. Appl. No. 11/193,320, filed Jul. 30, 2005, Simms, II.
U.S. Appl. No. 29/392,019, filed May 16, 2011, Simms, II.
Hughes, R., "Be A Grill Master," *Vertical*, Jul./Aug. 2010, 2 pages.

* cited by examiner



*FIG. 1*

*FIG. 2*



*FIG. 3*



*FIG. 4*          *FIG. 5*



*FIG. 6*



*FIG. 7*

# EXHIBIT C

US008381712B1

(12) **United States Patent**
    Simms, II

(10) Patent No.:   **US 8,381,712 B1**
(45) Date of Patent:        **Feb. 26, 2013**

(54) **SIMULTANEOUS MULTIPLE COOKING MODE BARBECUE GRILL**

(76) Inventor:   **John Lee Simms, II**, Atlanta, GA (US)

( * ) Notice:   Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 510 days.

(21) Appl. No.: **11/193,320**

(22) Filed:   **Jul. 30, 2005**

**Related U.S. Application Data**

(60) Provisional application No. 60/592,428, filed on Jul. 31, 2004, provisional application No. 60/592,429, filed on Jul. 31, 2004.

(51) **Int. Cl.**
    *F24B 3/00*        (2006.01)
(52) **U.S. Cl.** .............. **126/25 R**; 126/36; 126/2; 126/3; 99/339
(58) **Field of Classification Search** ................. 126/2, 3, 126/36, 151, 25 R, 307 R, 220; 99/339, 374, 99/448, 292
    See application file for complete search history.

(56)        **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D165,998 | S | 2/1952 | Pollard |
| 2,666,426 | A | 1/1954 | Pollard |
| 2,687,716 | A | 8/1954 | Wong |
| 2,817,331 | A * | 12/1957 | Kaplan et al. .............. 126/41 R |
| 2,902,026 | A | 9/1959 | Hathorn, Jr. |
| 2,903,549 | A * | 9/1959 | Joseph .......................... 99/400 |
| D196,553 | S | 10/1963 | Mayer |
| 3,477,580 | A | 11/1969 | Willinger |
| 3,541,947 | A * | 11/1970 | Anderson ...................... 99/332 |
| D229,660 | S | 12/1973 | Gammon |
| 3,802,413 | A * | 4/1974 | Pepin ......................... 126/25 B |
| 3,868,942 | A | 3/1975 | Lewis |
| D235,088 | S | 5/1975 | Erikson |
| 4,090,490 | A | 5/1978 | Riley et al. |
| 4,170,173 | A | 10/1979 | Bradford |

| | | | |
|---|---|---|---|
| D255,863 | S | 7/1980 | Futch |
| 4,392,419 | A * | 7/1983 | Bonny ........................... 99/339 |
| 4,665,891 | A * | 5/1987 | Nemec et al. .............. 126/25 R |
| 4,677,964 | A * | 7/1987 | Lohmeyer et al. ......... 126/41 R |
| 4,700,618 | A * | 10/1987 | Cox, Jr. ........................ 99/339 |
| 4,773,319 | A * | 9/1988 | Holland ........................ 99/446 |
| 4,809,671 | A * | 3/1989 | Vallejo, Jr. ................. 126/39 R |
| 4,878,477 | A * | 11/1989 | McLane ..................... 126/41 R |
| 4,886,045 | A * | 12/1989 | Ducate et al. ............. 126/41 R |
| 4,934,333 | A * | 6/1990 | Ducate et al. ................ 126/24 |
| 5,070,857 | A | 12/1991 | Sarten |
| 5,076,252 | A * | 12/1991 | Schlosser et al. ......... 126/25 R |
| 5,195,423 | A * | 3/1993 | Beller .......................... 99/340 |
| 5,213,027 | A * | 5/1993 | Tsotsos et al. ............... 99/339 |
| 5,460,159 | A * | 10/1995 | Bussey ....................... 126/25 R |
| 5,481,964 | A * | 1/1996 | Kitten .......................... 99/339 |
| 5,528,984 | A * | 6/1996 | Saurwein ...................... 99/482 |
| 5,566,606 | A * | 10/1996 | Johnston ...................... 99/446 |
| 5,706,797 | A * | 1/1998 | Moore et al. .............. 126/41 R |
| 5,752,497 | A | 5/1998 | Combs et al. |
| 5,768,977 | A * | 6/1998 | Parris et al. ................. 99/340 |
| 5,893,357 | A * | 4/1999 | Royer et al. ................. 126/9 R |
| 6,039,039 | A * | 3/2000 | Pina, Jr. ..................... 126/25 R |
| 6,103,289 | A * | 8/2000 | Tippmann et al. ......... 426/510 |

OTHER PUBLICATIONS

U.S. Appl. No. 11/194,120, filed Jul. 30, 2005, Simms, II.

(Continued)

*Primary Examiner* — Alfred Basichas
(74) *Attorney, Agent, or Firm* — Lee & Hayes, PLLC

(57)        **ABSTRACT**

A simultaneous multiple cooking mode barbecue grill that includes a first cooking mode unit configured to prepare food in a first cooking mode, a second cooking mode unit configured to prepare food in a second cooking mode, and a supporting structure that supports the first cooking mode unit and the second cooking mode unit so that the first and second cooking mode units can be moved securely and operated simultaneously to prepare food using multiple cooking modes.

**20 Claims, 3 Drawing Sheets**



## US 8,381,712 B1
### Page 2

**U.S. PATENT DOCUMENTS**

| | | | | |
|---|---|---|---|---|
| 6,145,431 | A | * | 11/2000 | Tippmann et al. .............. 99/330 |
| 6,189,528 | B1 | * | 2/2001 | Oliver ....................... 126/25 R |
| 6,209,533 | B1 | * | 4/2001 | Ganard ..................... 126/25 R |
| 6,257,130 | B1 | * | 7/2001 | Schlosser ..................... 99/482 |
| D447,913 | S | | 9/2001 | Cragg |
| 6,439,221 | B1 | * | 8/2002 | Ward et al. ............... 126/25 R |
| 6,508,165 | B2 | * | 1/2003 | Johnson ....................... 99/339 |
| 6,523,461 | B1 | * | 2/2003 | Johnston et al. ............. 99/340 |
| 6,557,545 | B2 | * | 5/2003 | Williams ................. 126/25 R |
| 6,564,793 | B2 | * | 5/2003 | DeClue ................... 126/25 AA |
| 6,606,986 | B2 | * | 8/2003 | Holland et al. ............ 126/25 R |
| 6,626,089 | B1 | * | 9/2003 | Hubert ....................... 99/339 |
| D483,602 | S | | 12/2003 | Murray |
| 6,681,759 | B2 | | 1/2004 | Bentulan |

| | | | | |
|---|---|---|---|---|
| D491,410 | S | | 6/2004 | Saunders |
| 6,820,538 | B2 | * | 11/2004 | Roescher ..................... 99/340 |
| 7,159,509 | B2 | * | 1/2007 | Starkey ...................... 99/339 |
| D607,263 | S | | 1/2010 | Antwine |
| D636,217 | S | | 4/2011 | Slater et al. |
| 2002/0106428 | A1 | * | 8/2002 | Szyjkowski ................. 426/113 |
| 2003/0019492 | A1 | | 1/2003 | Williams |
| 2010/0083947 | A1 | | 4/2010 | Guillory et al. |
| 2010/0258106 | A1 | | 10/2010 | Simms, II |

OTHER PUBLICATIONS

U.S. Appl. No. 29/392,019, filed May 16, 2011, Simms, II.
U.S. Appl. No. 29/392,027, filed May 16, 2011, Simms, II.

* cited by examiner



FIG. 1



FIG. 2



FIG. 3

US 8,381,712 B1

| 1 | 2 |

## SIMULTANEOUS MULTIPLE COOKING MODE BARBECUE GRILL

### CROSS REFERENCE TO RELATED APPLICATIONS

This application claims the benefit of priority to U.S. provisional patent application Ser. No. 60/592,428, entitled "Simultaneous Multiple Cooking Mode Barbecue Grill," and filed on Jul. 31, 2004, and to U.S. provisional patent application Ser. No. 60/592,429, entitled "Heating of Radiant Materials for Preparation of Barbecue," and filed on Jul. 31, 2004, both of which are incorporated by reference herein.

This application is related to U.S. nonprovisional patent application Ser. No. 11/194,120, entitled "Heating of Radiant Materials for Preparation of Barbecue," and filed concurrently with this application on Jul. 30, 2005, which is incorporated by reference herein.

### TECHNICAL FIELD

The present invention generally relates to cooking equipment, and more particularly, to a simultaneous multiple cooking mode barbecue grill.

### BACKGROUND OF INVENTION

Barbecue enthusiasts have the need to prepare barbecue using various modes (methods, manners, etc.) of cooking. For example, sometimes barbecuing with a charcoal based fuel (e.g., charcoal briquettes) is needed. Other times, barbecuing with a wood based fuel is needed (e.g., for a smoker process). Yet other times, barbecuing with a gas based fuel (e.g., propane) is needed. Furthermore, other types of fuel may be needed to satisfy the barbecuing objective.

Existing options typically consist of a barbecue grill that can only prepare barbecue in a single mode. For example, some options provide for charcoal grilling, others for wood or smoker grilling, and yet others for gas grilling. For the "multi-mode" barbecuer, these options require the use of more than one separate grill. A few options consist of a grill that can be converted between two modes, for example, charcoal and gas. However, these options are still limited in that they can only be operated in one mode at a time and typically require complicated reconfigurations to switch between cooking modes. Moreover, these existing options lack sufficient capability for controlling the various cooking modes in order to obtain performance that is even comparable to existing single mode grills.

Therefore, there is a need in the art for a barbecue grill that is capable of cooking in multiple modes simultaneously while offering the control and performance capabilities for each mode that is at least comparable to a corresponding single mode grill.

### SUMMARY OF INVENTION

The invention, in accordance with exemplary embodiments described herein, provides a simultaneous multiple cooking mode barbecue grill. In a general embodiment, the simultaneous multiple cooking mode barbecue grill can include a first cooking mode unit configured to prepare food in a first cooking mode, a second cooking mode unit configured to prepare food in a second cooking mode, and a supporting structure that supports the first cooking mode unit and the second cooking mode unit so that the first and second cooking mode units can be moved securely and operated simultaneously to prepare food using multiple cooking modes. Exemplary embodiments of the simultaneous multiple cooking mode barbecue grill disclosed herein can provide, among other benefits, the ability to effectively and conveniently prepare barbecue by various cooking modes at the same time.

### BRIEF DESCRIPTION OF DRAWINGS

FIG. 1 shows an exemplary multiple mode barbecue grill in accordance with exemplary embodiments of the invention.

FIG. 2 shows an alternate exemplary multiple mode barbecue grill in accordance with exemplary embodiments of the invention.

FIG. 3 shows another alternate exemplary multiple mode barbecue grill in accordance with exemplary embodiments of the invention.

### DETAILED DESCRIPTION OF EXEMPLARY EMBODIMENTS OF INVENTION

Exemplary embodiments of the invention will be described hereinafter with reference to the drawings, in which reference numerals may represent like elements throughout the several figures. In that regard, FIG. 1 shows an exemplary multiple mode ("multi-mode") barbecue grill 100 in accordance with exemplary embodiments of the invention. The grill 100 includes a first cooking mode unit 110 and a second cooking mode unit 120. The first cooking mode unit 110 may, for example, operate using a gas based fuel such as propane. This gas based fuel may be supplied from a fuel container 114 that is connected to the first unit 110. The first cooking mode unit 110 may include an openable cover 111 with exhausts 112. The second cooking mode unit 120 may, for example, operate using a charcoal based fuel such as charcoal briquettes, chunks, fragments, etc. The second cooking mode unit 120 may include an openable cover 121 with exhaust 122. The first unit 110 and second unit 120 are typically supported by a common supporting structure (assembly, platform, base, frame, etc.) 130.

Additional components of the grill 100, such as the fuel container 114, can also be supported by the supporting structure 130 so that the components of the grill 100 can be moved (positioned, placed, etc.) securely (e.g., without shifting, slippage, disturbance, etc.) and operated together simultaneously. In this regard, the first unit 110 and second unit 120 (as well as other components of the grill 100) may be attached, connected, or otherwise secured to the supporting structure 130 by means, methods, apparatuses, etc. that may be known in the art and/or apparent to one of ordinary skill in the art based on the disclosure herein. Moreover, the multi-mode grill 100 may include additional cooking mode units in accordance with some exemplary embodiments of the invention. For example, the multi-mode grill 100 may also include a third cooking mode unit 140, which can provide another mode for cooking with the grill 100. For instance, the third cooking mode unit 140 may be an auxiliary or side burner unit that can provide a radiant heat cooking mode by, for example, radiating heat, flames, etc. at one or more of its surfaces (e.g., via a burner component, structure, assembly, etc.) by the burning (combustion, etc.) of a gas based fuel such as propane. In that regard, the third cooking mode unit 140 may also be connected to the fuel container 114 for a fuel supply. However, the third cooking mode unit 140 may operate using other types of fuel (energy, materials, etc.) as well.

FIG. 2 shows an alternate exemplary multiple mode barbecue grill 200 in accordance with exemplary embodiments

US 8,381,712 B1

3

of the invention. In that regard, the grill 200 includes some of the same (or similar) features as the grill 100 discussed above. For example, the grill 200 includes a first cooking mode unit 210 and a second cooking mode unit 220. The first cooking mode unit 210 may include an openable cover 211 with exhausts 212, and the second cooking mode unit 220 may include an openable cover 221 with exhaust 222. Furthermore, the grill 200 includes a common supporting structure (assembly, platform, base, frame, etc.) 230 that can support the cooking mode units 210, 220 as well as additional components, such as a fuel container 214, all which may be attached, connected, or otherwise secured to the structure 230 by means, methods, apparatuses, etc. that may be known in the art and/or apparent to one of ordinary skill in the art based on the disclosure herein. Moreover, the grill 200 may include additional cooking mode units such as a third cooking mode (e.g., a side burner) unit 240. Additionally, in accordance with some exemplary embodiments of the invention, the grill 200 may include a supporting surface (shelf, platform, etc.) 250 (e.g., as depicted in FIG. 2), which can be used for various purposes such as to support food, cooking utensils, etc. that may be used along with the grill 200.

FIG. 3 shows another alternate exemplary multiple mode barbecue grill 300 in accordance with exemplary embodiments of the invention. Similar to the foregoing grill 200, the grill 300 also includes some of the same (or similar) features as the grill 100, which was discussed above. For example, the grill 300 includes a first cooking mode unit 310 and a second cooking mode unit 320 supported on a common supporting structure (assembly, platform, base, frame, etc.) 330, which can also support additional components such as a fuel container 314, and these components may be attached, connected, or otherwise secured to the structure 330 by means, methods, apparatuses, etc. that may be known in the art and/or apparent to one of ordinary skill in the art based on the disclosure herein. The first cooking mode unit 310 may include an openable cover 311 with exhausts 312, and the second cooking mode unit 320 may include an openable cover 321 with exhaust 322. Furthermore, the grill 300 may include a third cooking mode (e.g., a side burner) unit 340. Additionally, in accordance with some exemplary embodiments of the invention, the grill 300 can include a fourth cooking mode unit 324. This unit 324 may operate separately to prepare food in another cooking mode or may operate in conjunction with the second cooking unit 320. For example, the second cooking unit 320 may operate in a smoker cooking mode (e.g., wood burning), wherein the fourth unit 324 may operate as a firebox (offset firebox, side firebox, smoker box, etc.) in which fuel materials can be burned or combusted to provide heat and/or smoke to the second cooking unit 320 through an interconnection of the two units 320, 324 to prepare smoked barbecue. Furthermore, the fourth cooking mode unit may operate in other cooking modes, such as a separate barbecue or smoker grill unit for example.

The exemplary multiple mode barbecue grills 100, 200, 300 described herein can be used to barbecue or otherwise prepare food (e.g., heat, cook, grill, char, smoke, etc.) by multiple (e.g., at least two) cooking modes (e.g., gas, charcoal, wood burning, electrical, etc.) by multiple (e.g., concurrently, together, at the same time, etc.) on a single overall supporting structure (assembly, platform, base, frame, etc.) 130, 230, 330. Furthermore, each cooking mode provided by the multi-mode grills 100, 200, 300 may be fully and independently controlled (e.g., by means, methods, apparatuses, etc. that may be known in the art and/or apparent to one of ordinary skill in the art based on the disclosure herein) to obtain optimal performance for each cooking mode that is at

4

least comparable to the operation of corresponding single cooking mode grills. Moreover, operation in the various cooking modes provided by the grills 100, 200, 300 can be conducted without the need for complicated reconfigurations of the cooking units 110, 120, 140, 210, 220, 240, 310, 320, 324, 340. Thus, the multiple mode barbecue grills 100, 200, 300 offer a barbecue cook, enthusiast, etc. the ability to, among other things, effectively and conveniently prepare barbecue by various cooking modes at the same time. These and other such uses of exemplary embodiments of the invention will be apparent to one of ordinary skill in the art in light of the disclosure herein.

The exemplary multiple mode barbecue grills 100, 200, 300 described herein and/or various components thereof (e.g., the cooking units 110, 120, 140, 210, 220, 240, 310, 320, 324, 340 or supporting structure 130, 230, 330) can have various shapes, sizes, and configurations (e.g., other than those discussed above) within the scope of exemplary embodiments of the invention. Furthermore, the functions of such components are not limited to those described above with respect to the exemplary embodiments. Various combinations of number, types, configurations, etc. of cooking mode units can be included in the grills 100, 200, 300 in accordance with exemplary embodiments of the invention. Moreover, one or more of the various cooking units 110, 120, 140, 210, 220, 240, 310, 320, 324, 340 may include one or more features similar to those of a corresponding cooking unit of a single mode grill. Such features and variations of exemplary embodiments of the invention will be apparent to one of ordinary skill in the art in light of the disclosure herein.

The exemplary multiple mode barbecue grills 100, 200, 300 described herein and/or various components thereof (e.g., the cooking units 110, 120, 140, 210, 220, 240, 310, 320, 324, 340 or supporting structure 130, 230, 330) can be constructed of various materials that may be known in the art and/or apparent to one of ordinary skill in the art based on the disclosure herein, such as but not limited to metallic materials, non-metallic materials, composite materials, etc. Furthermore, the grills 100, 200, 300 and/or various components thereof can be manufactured according to various methods, processes, etc. that may be known in the art and/or apparent to one of ordinary skill in the art based on the disclosure herein, such as but not limited to manual manufacturing methods, automated manufacturing methods, assembly line processes, metallurgical processes, chemical processes, etc.

It should be understood that the foregoing descriptions merely relate to exemplary, illustrative embodiments of the invention. Therefore, it should also be understood that other various modifications may be made to exemplary embodiments described herein within the scope of the invention, which will be recognized by one of ordinary skill in the art in light of the disclosure herein.

What is claimed is:

1. A barbecue grill having multiple cooking units, comprising:

a support structure configured to support a plurality of cooking units;

a first cooking unit configured to cook food using gas cooking fuel, the first cooking unit attached to the support structure and including at least one first grill, the first cooking unit further including an openable first cover attached to the first cooking unit that selectively covers the first grill, wherein the first cover includes at least one exhaust; and

a second cooking unit configured to cook food using solid cooking fuel, the second cooking unit attached to the support structure and including at least one second grill,

US 8,381,712 B1

5

the second cooking unit further including an openable second cover attached to the second cooking unit that selectively covers the second grill, wherein the second cover includes at least one exhaust,

wherein the first cooking unit and the second cooking unit are simultaneously operable to cook food and the first grill and second grill are selectively and independently coverable.

2. The barbeque grill of claim 1, further comprising:

a side burner supported by the supporting structure and comprising a component configured to prepare food by radiating heat or emitting flames;

wherein the side burner, the first cooking unit, and the second cooking unit are simultaneously operable to cook food.

3. The barbeque grill of claim 2, further comprising:

a firebox supported by the supporting structure and configured to provide heat or smoke to the second cooking unit when a fuel material is burned or combusted in the firebox;

wherein the firebox simultaneously operable with the side burner, the first cooking unit, and the second cooking unit.

4. The barbeque grill of claim 1, wherein the first cooking unit and the second cooking unit are operable independently of each other.

5. The barbeque grill of claim 1, further comprising:

at least one substantially vertical panel positioned between the first cooking unit and the second cooking unit.

6. The barbeque grill of claim 1, wherein the support structure comprises at least two wheels.

7. The barbeque grill of claim 1, wherein the support structure is configured to hold at least one fuel container.

8. The barbeque grill of claim 1, wherein the first and second cooking units are each configured to hold food over a flame.

9. The barbeque grill of claim 1, wherein the configuration of the at least one exhaust of the first cover includes a configuration of at least two exhausts.

10. A barbecue grill having multiple means for cooking, comprising:

a first means for cooking food using gas cooking fuel, the first means for cooking including at least one first grill and an openable first cover means for selectively covering the first grill, wherein the first cover means is attached to the first means for cooking and includes at least one exhaust;

a second means for cooking food using solid cooking fuel, the second means for cooking including at least one second grill and an openable second cover means for selectively covering the second grill, wherein the second cover means is attached to the second means for cooking and includes at least one exhaust means; and

a structure means for supporting the first means for cooking and the second means for cooking;

wherein the first means for cooking and the second means for cooking are simultaneously operable to cook food and the first grill and second grill are selectively and independently coverable.

11. The barbeque grill of claim 10, further comprising:

a burner means for preparing food by radiating heat or emitting flames, the burner means supported by the structure means;

6

wherein the burner means, the first means for cooking, and the second means for cooking are simultaneously operable to cook food.

12. The barbeque grill of claim 11, further comprising:

a firebox means for providing heat or smoke to the second means for cooking, the firebox means supported by the structure means;

wherein the firebox means is simultaneously operable with the burner means, the first means for cooking, and the second means for cooking.

13. The barbeque grill of claim 10, wherein the first means for cooking and the second means for cooking are operable independently of each other.

14. The barbeque grill of claim 10, further comprising:

at least one substantially vertical panel positioned between the first means for cooking and the second means for cooking.

15. The barbeque grill of claim 10, wherein the structure means comprises a means for holding at least one fuel container.

16. The barbeque grill of claim 10, wherein the configuration of the at least one exhaust means of the first cover means includes a configuration of at least two exhaust means.

17. A barbecue grill having multiple cooking units, comprising:

a support structure configured to support a plurality of cooking units;

a first cooking unit supported by the support structure, the first cooking unit having a substantially cylindrical shape, the first cooking unit configured to cook food using gas cooking fuel, the first cooking unit including at least one first grill and an openable first cover attached to the first cooking unit that selectively covers the first grill, wherein the first cover includes at least one exhaust; and

a second cooking unit supported by the support structure, the second cooking unit having a substantially cylindrical shape, the second cooking unit configured to cook food using solid cooking fuel, the second cooking unit including at least one second grill and an openable second cover attached to the second cooking unit that selectively covers the second grill, wherein the second cover includes at least one exhaust,

wherein the first cooking unit and the second cooking unit are simultaneously operable to cook food and the first grill and second grill are selectively and independently coverable.

18. The barbeque grill of claim 17, wherein the first and second cooking units are supported by the support structure such that the substantially cylindrical shape of the first cooking unit and the substantially cylindrical shape of the second cooking unit are aligned substantially coaxially.

19. The barbeque grill of claim 18, wherein the first cover forms a portion of the substantially cylindrical shape of the first cooking unit, and wherein the second cover forms a portion of the substantially cylindrical shape of the second cooking unit.

20. The barbeque grill of claim 17, wherein the configuration of the at least one exhaust of the first cover includes a configuration of at least two exhausts.

* * * * *

# EXHIBIT D



August 21st, 2013

Mr. Pete Wagner
Meijer
2929 Walker Ave., N.W.
Grand Rapids, MI 49544
pete.wagner@meijer.com

Dear Pete,

I personally want to let you know that A&J Manufacturing (Char-Griller®) has brought an action for patent infringement in the United States International Trade Commission (ITC) and in district court against infringers of A&J's patents on our DUO™ grill. A&J is primarily seeking to ban importation into the US of grills that infringe our DUO™ patents, which is the specific relief that the ITC grants. The filings of the district court actions for patent infringement right now are procedural in nature to simply preserve the venue for any litigation relating to our patents.

Because the relief of an import ban from the ITC (called a general exclusion order) is very broad, A&J has had to bring the action against 18 different respondents and manufacturers at the beginning. It is likely that even more infringing manufacturers will be added to the case as A&J discovers further sources of the infringing grills.

We greatly appreciate our relationship with Meijer and wanted to let you know of this action and that, right now, it is focused on the manufacturers of the infringing grills and not at the retailers who might sell the infringing grills. However, an exclusion order could adversely affect Meijer should it try to import grills into the US that fall under an exclusion order.

Please let us know a convenient time we can call you to discuss any concerns you may have regarding what grills may be affected by an exclusion order and to discuss the action generally.


Sincerely,

*Jay*

**Jay Simms**
President

JS 44 (Rev. 12/12)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff    Columbus-Muscogee
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Glynn
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
James B. Durham, Dunham & Rizzi, P.C.
777 Gloucester Street, Suite 300
Brunswick, GA 31520    (912) 264-4480

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
Another District
*(specify)*

☐ 6   Multidistrict
Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 2201 and 2202; the Patent Laws of the United States, 35 U.S.C. § 1; Lanham Act 15 USC § 1051
Brief description of cause:
Declaratory judgment; false advertising; unfair competition; tortious interference

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE   Lisa Godbey Wood

DOCKET NUMBER 2:13-cv-00115-LGW-JEG

DATE   9/23/13

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.